## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS WOLFE and MELISSA SNYDER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SUNBURY and JEFFREY WOJCHIECHOWSKI,<br><br>Defendants. | No. 4:24-CV-00251<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### JULY 8, 2024

Title 42 U.S.C § 1983 is an important tool for holding government actors responsible for violating an individual's civil rights when acting under color of state law. It is not, however, a catch-all remedy for alleged constitutional violations resolving zoning disputes. Instead, these disputes should be resolved by local decision-makers unless there is a clear constitutional injury, in which case the federal courts should intervene. Here, the allegations are insufficient to demonstrate such an injury and, accordingly, the Complaint must be dismissed.

## I. PROCEDURAL HISTORY

In February 2024, Thomas Wolfe and Melissa Snyder initiated this litigation by filing a Complaint against the City of Sunbury and Code Department Supervisor

Jeffrey Wojchiechowski.[1] In their Complaint, Plaintiffs assert four claims for relief. Against Wojchiechowski, Plaintiffs allege two violations of the Equal Protection Clause of the Fourteenth Amendment (Count I and Count II), together with a violation of the Fourteenth Amendment's Due Process Clause (Count III). Plaintiffs also bring a *Monell* claim against Sunbury (Count IV).[2]

In April 2024, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The motion is now ripe for disposition; for the reasons that follow, it is granted without prejudice.

## II.   FACTUAL BACKGROUND

### A.   Property Code Citations

Plaintiffs purchased a condemned property located at 519 N. Fifth St. in Sunbury, Pennsylvania (the "Property") in November 2016, intending to renovate it to become habitable.[4] Although the Property had still not been renovated by early 2020, Wolfe and a Sunbury Code Officer agreed that Wolfe's upcoming shoulder surgery would delay renovations on the Property.[5] Plaintiffs' understanding was that Sunbury would delay in taking action regarding Plaintiffs' failure to quickly

---

[1]   Doc. 1 (Compl.) 1 ¶¶35-42.
[2]   436 U.S. 658, 694 (1978).
[3]   Doc. 7 (Mot.)
[4]   Doc. 1 (Compl.) ¶7.
[5]   *Id.* ¶9.

renovate the Property.[6] Wolfe kept the Code Officer updated on his surgeries and the renovations.[7]

Despite this alleged agreement, Plaintiffs received a citation for overgrown weeds and grass in July 2021.[8] After Wolfe contacted Sunbury to inform it that the overgrown grass was on the neighboring property, Sunbury dropped the citation.[9] Two days later, Wolfe signed a form at the Sunbury Code Office in which Sunbury agreed that Wolfe had 90 days to complete all listed repairs on the Property.[10] However, less than a month later, Plaintiffs received yet another citation from Wojciechowksi for failing to keep the Property in good repair.[11]

Wolfe contacted the Code Office to ask why, despite Sunbury's 90-day agreement, he was being fined after a passage of only 30 days.[12] But a different Code Enforcement Officer insisted that Wolfe had only 30 days to complete the repairs and indicated that he would be fined weekly until the Property was removed from the nuisance property list.[13] Wolfe requested copies of the complaints regarding the Property and received a list including the first dismissed citation as well as a notice

---

[6]   *Id.*
[7]   *Id.*
[8]   *Id.* ¶10.
[9]   *Id.* ¶11.
[10]  *Id.* ¶12.
[11]  *Id.* ¶6; ¶12.
[12]  *Id.* ¶13.
[13]  *Id.* ¶13.

to Code Enforcement Officers to "watch" the Property.[14] Four fines were then issued to Plaintiffs: one in August 2021, two in September 2021, and one in October 2021.[15]

In October 2021, three citations were dismissed by the local magistrate following a hearing.[16] Nevertheless, Sunbury continued scrutinizing the Property. On the day of the hearing, a Code Officer was observed wandering around the Property without notice.[17] The following day, Wojciechowksi advised Plaintiffs he was sending a citation for a nonfunctional front door on the Property.[18]

Subsequently, Wolfe went to Sunbury City Hall to review property records.[19] Following this review, two police officers met him outside of City Hall, questioning Wolfe about his business there.[20] Wolfe then returned to City Hall to file a harassment and intimidation complaint against the officers, which apparently provoked them further.[21] The encounter escalated quickly: the officers told Wolfe that he would be arrested if he did not leave; injured his shoulder by pushing him onto a counter; handcuffed him; and shackled him to a chair until medics advised the officers that Wolfe had been injured, at which point he was released.[22] Wolfe

---

[14] *Id.* ¶14.
[15] *Id.*
[16] *Id.* ¶15.
[17] *Id.* ¶16.
[18] *Id.*
[19] *Id.* ¶17.
[20] *Id.*
[21] *Id.*
[22] *Id.*

was charged with resisting arrest, defiant trespass in City Hall and disorderly conduct; the charges were later dismissed.[23]

The Property dispute continued.

In June 2022, Wojciechowksi sent a notice requesting access to the property for an inspection.[24] The notice warned Wolfe that if he refused access, the Code Office would begin to fine him again.[25] This was followed by another notice for determination that was taped to the Property's door by the Sunbury Planning Commission's Chairperson; this notice included a list of property code violations delineating the Property's blighted status.[26]

In the same month, the Plaintiffs' summary appeal from a March 30, 2022 hearing was decided by the Honorable Paige Rosini in the Northumberland County Court of Common Pleas. The Complaint fails, however, to provide any details regarding the purpose of the hearing or the events leading up to the hearing.[27] Judge Rosini found Plaintiffs not guilty of all charges.[28]

To demonstrate that the Property was not blighted, Plaintiffs hired Steve Cartwright with CSI Home Inspections, LLC to inspect the Property in August 2022.

---

[23] *Id.* ¶19.
[24] *Id.* ¶20.
[25] *Id.*
[26] *Id.*
[27] *Id.* ¶33.
[28] *Id.*

Cartwright found no property code violations upon inspection of the Property.[29] The following day, a City Administrator agreed to meet with Wolfe.[30] Despite Cartwright's inspection, one day after agreeing to meet, Sunbury posted a notice stating that the Property was unsafe for human occupancy.[31] Sunbury also posted a water shut off notice, even though there had been no water at the property for over a year.[32] On August 11, 2022, Plaintiffs met again with the City Administrator, a Code Officer, and Cartwright to discuss the property code violations.[33] The City Administrator stated more than once that there were never any previous property code violations and agreed to remit all pending fines.[34]

Despite the resolution reached during this meeting, on August 19, 2022, Plaintiffs received a fine for failure to keep the exterior of the property in good repair.[35] Approximately one week later, Sunbury informed Wolfe that it had dropped the citation.[36] However, when Wolfe visited the magistrates' office to confirm that Sunbury had dropped this citation, he learned the citation was not dropped.[37] Wolfe immediately pleaded not guilty.[38]

---

[29] *Id.* ¶22.
[30] *Id.* ¶23.
[31] *Id.* ¶24.
[32] *Id.*
[33] *Id.*
[34] *Id.* ¶25.
[35] *Id.* ¶26.
[36] *Id.*
[37] *Id.* ¶27.
[38] *Id.*

In September 2022, Plaintiffs received notice that a trial had been scheduled to commence in October 2022 regarding the citation.[39] Four days later, a Code Officer advised Plaintiffs that all charges would be withdrawn.[40] As before, that was apparently not the case.

### B.    Nuisance Determination

Concurrently, Plaintiffs were dealing with a nuisance determination for the Property. Upon receiving their second citation in August 2021, Plaintiffs were also notified that the Property would be continually fined until it was removed from the nuisance list. In the ensuing months, Plaintiffs received notice that the Property was a public nuisance.[41] In late July 2022, Wojciechowski advised Plaintiffs that they had 30 days to schedule an appeal hearing before the Sunbury City Council regarding the Property's nuisance determination.[42] Despite all citations having been dismissed during the August 11, 2022 meeting and no new property code violations, a nuisance hearing was scheduled for September 2022.[43] That month, Sunbury advised Plaintiffs that the nuisance hearing would be dropped provided Plaintiffs could demonstrate that an electrician was scheduled to go to the property to install grounding rods for the electrical service.[44]

---

[39] *Id.* ¶31.
[40] *Id.* ¶32.
[41] *Id.*
[42] *Id.* ¶21.
[43] *Id.* ¶28.
[44] *Id.* ¶29.

In September 2022, David Becker, the City Administrator, entered the Property without Plaintiffs' permission or notice.[45] Following Judge Rosini's judgment in Plaintiffs' favor on summary appeal, Plaintiffs were advised that the Property was taken off the nuisance list in November 2022 because no work needed to be completed on the property.[46]

## III.   MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[47] and *Ashcroft v. Iqbal*,[48] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[49] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption

---

[45]   *Id.* ¶30.
[46]   *Id.* ¶34.
[47]   550 U.S. 544 (2007).
[48]   556 U.S. 662 (2009).
[49]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[50]

## IV.    ANALYSIS

Title 42 U.S.C. §1983 provides a cause of action for violations of the United States Constitution arising from the deprivation of a constitutionally protected right without due process of law by the actions of an individual acting under color of state law.[51] Consequently, plaintiff seeking relief under §1983 must show a state actor deprived him of a constitutionally protected right.[52] For their Equal Protection claims Plaintiffs allege that they faced selective enforcement and "class of one" discrimination. Plaintiffs also allege that they faced interference with their property interest in violation of the Due Process Clause. Plaintiffs fail to state a §1983 claim for their violation of constitutional rights against Wojciechowski, much less for the municipal liability claim under *Monell*.

### A.    Class of One Claim

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prevents "any State" from "depriv[ing] any person of life, liberty

---

[50]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[51]   *Bates v. Paul Kimball Hospital,* 346 F. App'x 883, 885 (3d Cir. 2009).

[52]   The parties do not dispute that Wojciechowksi is a state actor. *See West v. Atkins,* 487 U.S. 42, 49 (1988) (holding that "state employment is generally sufficient to render the defendant as a state actor.").

or property without due process of law."[53] The purpose of the Equal Protection Clause is to ensure every person "within a State's jurisdiction is protected against arbitrary and intentional discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."[54] Accordingly, under the Equal Protection Clause, similarly situated individuals are protected from being treated in a discriminatory manner without any rational basis.[55] Persons are similarly situated when they are comparable to the plaintiff in all relevant aspects.[56]

To state an equal protection claim, a complaint must allege facts showing a similarly situated comparator and instances of differential treatment.[57] "The Third Circuit "does not require [the plaintiff] to show that the [comparators] are *identical* in all relevant respects" only that the "[p]ersons are *alike* in all relevant respects."[58] Still, an Equal Protection claim must allege more than "broad generalities" when identifying a comparator.[59] To state a "class of one" claim a plaintiff must show "(1) the defendant treated him differently from others similarly situated, (2) the defendant

---

53  U.S. Const. Amend. xiv.

54  *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

55  *Mann v. Brenner*, 375 F. App'x 232, 238 (3d Cir. 2010).

56  *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49 (3d Cir. 2019).

57  *Brooks v. State Coll. Area Sch. Dist.*, No. 4:22-CV-01335, 2023 U.S. Dist. LEXIS 225112 (M.D. Pa. Dec. 18, 2023) (clarifying "judicial confusion" surrounding the allegations necessary to survive dismissal in this context) (citing *Perano v. Township of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of . . . similarly situated parties.")).

58  *Southersby Dev. Corp. v. Borough of Jefferson Hills,* 852 F. Supp. 2d 616, 628 (W.D. Pa. 2012).

59  *Stratford v. Sec'y of Pa. Dep't of Corr.,* 53 F.4th 67, 74 (3d Cir. 2022) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11d Cir. 2007)).

did so intentionally, and (3) there was no rational basis for the difference in treatment."[60]

Here, Plaintiffs' do not allege a similarly situated comparator such as other owners of blighted property in Sunbury.[61]  In sum, "[t]he failure to identify similarly situated persons dooms an equal-protection claim."[62] Moreover, Plaintiffs' fail to allege that Wojciechowski intentionally, arbitrarily or irrationally deprived Plaintiffs of a constitutional right by enforcing Sunbury's property code. It is neither arbitrary nor irrational for a code officer to enforce code ordinances after a five-year grace period.

### B.    Selective Enforcement Claim

The Equal Protection Clause forbids selective-enforcement based upon racial or class based discriminatory animus.[63] "To establish a selective enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly

---

[60] *Phillips v. City of Allegheny,* 515 F.3d 224, 243 (3d Cir. 2008).

[61]   *Id.* ¶38.

[62]   *Stratford*, 53 F.4th at 74 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

[63]   *Hill v. City of Scranton*, 411 F.3d 118, 123 (3rd Cir. 2005).

situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ."[64] Once again, Plaintiffs have failed to identify a comparator despite allegations that Defendants subjected them to intentional differential treatment. Plaintiffs have therefore failed to adequately state a claim.

### C.    Substantive Due Process

To succeed on a substantive due process claim, Plaintiffs must show that they were deprived of a constitutionally protected property or liberty interest through arbitrary government action.[65] Constitutional arbitrariness is defined as conduct that "shocks the conscience."[66] The Third Circuit has held that conscience shocking behavior may include "deprivation of a liberty or property interest based on, inter alia, self-dealing, government corruption, or racial animus." [67]  However "without more, unfair enforcement of zoning ordinances is not conscience shocking behavior."[68]

In this case, Plaintiffs allege that the Defendants "actions towards the plaintiffs were so arbitrary and capricious that they have substantially interfered with

---

[64]   *Dombrosky v. Stewart*, No. 3:10-CV-1477, 2010 U.S. Dist. LEXIS 117655, at *7 (M.D. Pa. Nov. 4, 2010) (quoting *Dique v. NJ State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (quoting *Hill v. Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).
[65]   *Thorpe v. Upper Makefield Twp.*, 758 F. App'x 258 (3d Cir. 2018).
[66]   *Id.*
[67]   *Id.*
[68]   *Id.*

the use and enjoyment of their property."[69] Although Plaintiffs claim that they were deprived of their constitutionally protected property interest, the facts show otherwise. No property was taken from Plaintiffs, and therefore no constitutionally protected right was interfered with. Plaintiffs reference the Takings Clause of the United States Constitution in their Complaint.[70] The Takings Clause establishes that private property "shall… [not] be taken for public use, without just compensation." The facts do not establish that the Property was ever taken. In point of fact, despite receiving a condemnation notice, the property was never actually condemned. Plaintiffs allege interference with the use and enjoyment of property but offer no examples of interference. Since Plaintiffs have failed to allege their property interest was taken, there can be no sustainable substantive due process claim.

### D.      Procedural Due Process

The purpose of the Fourteenth Amendment of the Constitution is to forbid states from depriving individuals of life, liberty or property without due process of the law.[71] Our Court of Appeals has continually held that when claims for procedural due process violations are brought against a state actor, the "familiar two-stage analysis" is still employed.[72] Courts must begin by asking "whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection

---

[69]   Doc. 1 (Compl.) ¶56.
[70]   *Id.* ¶58.
[71]   U.S. Const. amend. XIV, § 1.
[72]   *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

of 'life, liberty, or property'; if protected interests are implicated, courts then must decide what procedures constitute 'due process of law.'"[73]

Here, Plaintiffs allege deprivation of the Property interest without due process despite availing themselves of the procedural process for challenging citations in Sunbury. The Complaint even lays out the procedural process Plaintiffs utilized, detailed by the several notices received and hearings scheduled and held.[74] By virtue of utilizing this procedural process, Plaintiffs came to a resolution with Sunbury. One week after judgment was entered in favor of the Plaintiffs, the Property was removed from the nuisance list; Plaintiffs have not received any citations or unwarranted property visits since.

Nor does anything in the Complaint indicate that these processes were in any way deficient. To the contrary, the fact that the proceedings resulted in Plaintiffs favor is strong evidence that the procedural process afforded was adequate. Absent additional allegations, this claim cannot proceed.

### E.    *Monell* Claim

Finally, Plaintiffs' § 1983 claims also state a municipal liability claim against Sunbury. The Supreme Court of the United States held in *Monell v. Department of Social Services* that the government as an entity is responsible when the execution

---

[73]    *Robb v. Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984).
[74]    Doc. 1 (Compl.) ¶10-14,17,20-21,24,26-34.

of its established policies or customs created by lawmakers or individual actors on behalf of the municipality result in constitutional injury.[75]

The Third Circuit has "reiterated [that] a § 1983 claim against a municipality may proceed in two ways: (1) A plaintiff may put forth an unconstitutional policy or custom of the municipality that led to his or her injuries; or (2) that [the injuries] were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."[76] Therefore, for Plaintiff's *Monell* claim to attach liability to Sunbury, a custom or policy or a deliberate indifference to the actions of its employees resulting in constitutional injury must be shown to exist.[77]

Plaintiffs allege that Sunbury "has adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or the acquiescence in the abuse of power by the code enforcement officers."[78] But Plaintiffs fail to offer details regarding the particular policy or custom referenced in the Complaint. Plaintiffs also fail to allege facts supporting the claim that Sunbury was put on notice for the alleged unconstitutional actions of its employees. Without properly alleging either a municipally-based policy or custom or that Sunbury

---

[75]   436 U.S. 658, 694 (1978).

[76]   *Morgan v. Ctr. Cnty.*, No. 4:23-CV-00872, 2024 U.S. Dist. LEXIS 70626, at *24 (M.D. Pa. Apr. 18, 2024).

[77]   *Monell*, 436 U.S. at 694.

[78]   Doc. 1 (Compl.) ¶62.

received notice of unconstitutional practices and acted with deliberate indifference toward this notice, the *Monell* claim fails.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss under Rule 12(b)(6) is granted without prejudice.  Plaintiffs may amend their Complaint within twenty-one days.[79] However, they are advised not to attempt to stave off dismissal by creatively restating facts already alleged. If there are no new facts to be alleged, or existing facts that may be alleged more completely, amendment is discouraged.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[79]   *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (leave to amend should be "freely given" regardless of whether it is specifically requested).