## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS WOLFE and
MELISSA SNYDER,

        Plaintiffs,

    v.

CITY OF SUNBURY and
JEFFREY WOJCIECHOWSKI,

        Defendants.

No. 4:24-CV-00251

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 5, 2024

In this Section 1983 case, Plaintiffs appear to have abandoned their opposition to contesting one Defendant's personal liability and qualified immunity and failed to plausibly allege the other's municipal liability for the underlying constitutional violations. These failings are dispositive to the pending motion. But leave to amend is within this Court's discretion, and I find that dismissal with prejudice would be overly harsh. Given that this litigation may continue, the Court also provides a more fulsome explanation of the alleged underlying constitutional violations at issue here, with the goal of streamlining future proceedings. I conclude that Plaintiffs have plausibly alleged an underlying Equal Protection Clause violation. The amended complaint is therefore dismissed without prejudice.

## I.     BACKGROUND

In February 2024, Plaintiffs, Thomas Wolfe and Melissa Snyder, filed a complaint against Defendants, Jeffrey Wojciechowski and the City of Sunbury ("Sunbury").[1] Defendants filed a motion to dismiss in April 2024, which this Court granted without prejudice in July 2024.[2] Plaintiffs filed their amended complaint later that month.[3] Now pending are Defendant's motion to strike and motion to dismiss, filed in August 2024, which this Court permitted to be filed under seal due to the attachment of a confidential exhibit.[4] The motions are now ripe for disposition. For the reasons stated below, the motion to strike is denied, and the motion to dismiss is granted with leave to amend.

## II.     FACTS

As before, the amended complaint generally alleges that after Plaintiffs purchased a condemned property with the intent of renovating it, and following a lengthy forbearance period, they were subjected to a course of frivolous citations. The facts in the amended complaint, which the Court must accept as true for purposes of this motion, are as follows.

---

[1]     Complaint, Doc. 1.
[2]     Motion to Dismiss, Doc. 7; Order, Doc. 17.
[3]     Amended Complaint, Doc. 18.
[4]     Motion to Strike and Motion to Dismiss, Doc. 19; Brief in Support of Motion to Dismiss and Motion to Strike ("BIS"), Doc. 25; Order, Doc. 27.

### A.    Plaintiffs Purchase Condemned Home

On or about November 1, 2016, Plaintiffs purchased a home located at 519 North Fifth Street in Sunbury, Pennsylvania (the "Property").[5] The home was purchased "in a condemned state," and "both the Plaintiffs and the Defendants knew that the home was purchased with the understanding that it would be renovated and cleaned up in order to make it habitable."[6] The amended complaint does not explain any further details of this "understanding."

Plaintiffs were working with a code officer, Eric Long, in making the repairs.[7] They had a verbal agreement with Long and Sunbury's prior city administrator that, because Wolfe had several surgeries scheduled to begin in early 2020, the City would delay in taking any code enforcement action against the Property.[8] According to the amended complaint, Wolfe was in contact with Long and kept him updated regarding his surgeries and work that would be done on the Property.[9] The amended complaint does not explain how long the period of delay would be, or any other details regarding Wolfe's communication with Long.

---

[5]    Amended Complaint, Doc. 18 ¶7.
[6]    *Id.* ¶8.
[7]    *Id.* ¶9.
[8]    *Id.*
[9]    *Id.*

### B.    2021 Code Enforcement Action

On July 8, 2021, the Plaintiffs received what would be the first of many citations from the Sunbury Code Office, this time for "failure to maintain grass and weeds on the Property."[10] Wolfe contacted the Code Office, explaining that his two sons were maintaining the Property and cutting the lawn on a weekly basis, and that "any weeds that were on the Property were that of a neighbor."[11] The Code Office dropped the charges.[12]

Later that month, on July 23, 2021, Wolfe went to the Sunbury Code Office and signed a form stating that he had 90 days to complete all listed repairs.[13] Less than one month later, however, Wolfe received a fine from the Code Office for failure to keep the Property in good repair.[14] The amended complaint alleges that when Wolfe asked why he had received a citation given that he was supposed to have 90 days to complete repairs, the Code Officer "became extremely rude and hostile and stated that the Plaintiff had only 30 days to make repairs."[15] She further stated that "he would receive weekly fines until the Property was removed from the

---

[10]   *Id.* ¶10.
[11]   *Id.* ¶11. This allegation is confusing as a neighbor's weeds would be on the neighboring property, not the Plaintiffs' property. The Court construes this allegation as the Defendants do, to mean that Plaintiffs were cited for weeds on his neighbors' property.
[12]   *Id.*
[13]   *Id.* ¶12. The amended complaint does not contain any detail about what prompted Wolfe's visit or about what repairs were listed on the form.
[14]   *Id.* ¶12.
[15]   *Id.* ¶13.

public nuisance properties list."[16] Wolfe then requested copies of any complaints about his properties and was given a list including an "unfounded complaint about high grass" and a notice to officers to watch the Property.[17]

The Code Office then began fining Wolfe weekly for several weeks, including on August 31, 2021, September 8, 2021, September 16, 2021, and September 23, 2021.[18] Sunbury then sent Plaintiffs a notice that the Property was a public nuisance and filed another citation on October 1, 2021.[19] Wolfe attended a hearing on October 27, 2021, at which three of the citations were dismissed.[20] Also on October 27, 2021, a Code Officer was seen wandering around Plaintiffs' property without notice.[21] On October 28, 2021, Jeffrey Wojciechowski, Sunbury's Code Department Supervisor, advised Plaintiffs that he was sending them a citation because the front door of the house did not work properly.[22]

Wolfe then went to Sunbury City Hall to review records regarding the Property.[23] Afterwards, he was met on the sidewalk outside of City Hall by two police officers, who asked what Wolfe was "trying to accomplish," followed Wolfe back into City Hall when he attempted to file a harassment and intimidation

---

[16] *Id.*
[17] *Id.* ¶14.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶15.
[21] *Id.* ¶16.
[22] *Id.* ¶¶6, 16.
[23] *Id.* ¶17.

complaint, and told Wolfe he was trespassing in City Hall and would be arrested for "making people uncomfortable."[24] The officers then allegedly grabbed Wolfe by the right arm, put handcuffs on his right wrist, pushed him to a nearby counter, and shackled Wolfe to a chair until medics were called, who advised that Wolfe had been injured.[25] Wolfe was unshackled and told that he was free to go.[26] Although Wolfe was initially charged with resisting arrest, defiant trespass in City Hall, and disorderly conduct, all charges were dismissed on November 30, 2021.[27]

### C.    2022 Code Enforcement Action

After several months of silence, in June 2022, the Sunbury Code Office informed Wolfe that Wojciechowski wanted access to the Property to conduct an inspection.[28] The amended complaint never states whether Wolfe permitted Wojciechowski to conduct any inspection. Wolfe received a notice of blighted property in July 2022.[29]

Also in July 2022, Wojciechowski advised Plaintiffs that they had thirty days to schedule an appeal hearing before the Sunbury City Council respecting the nuisance determination of the Property.[30] Another notice of determination followed, taped to the Plaintiffs' door by the Chairperson of the Sunbury Planning Commission

---

[24]  *Id.* ¶¶17-18.
[25]  *Id.* ¶18.
[26]  *Id.*
[27]  *Id.* ¶19.
[28]  *Id.* ¶20.
[29]  *Id.*
[30]  *Id.* ¶21.

and providing a list of violations to show why the Property was deemed blighted.[31] Plaintiffs then hired Steve Cartwright, an inspector, who determined that the Property contained no city code violations.[32] On August 12, 2022, a water shut off notice was posted to Plaintiffs' window "even though there's been no water on the property for over a year."[33] A danger notice was also posted to the same window, stating that the structure was unsafe for human occupancy, even though it had been recently inspected.[34]

Derek Becker, a City Administrator, agreed to meet with Wolfe on August 11, 2022; that meeting took place on August 16, 2022.[35] Both Plaintiffs and Cartwright were present to discuss the violations, and Becker "stated more than once" at the meeting that "there were never any previous violations."[36] Sunbury agreed to drop all pending fines at the end of the meeting.[37] Becker further advised that the Plaintiffs must appeal the nuisance determination by August 29, 2022.[38]

Despite the resolution Plaintiffs reached with Becker, they received yet another fine on August 19, 2022 for failure to keep the exterior of the Property in good repair.[39] Becker claimed that this citation, which had been dated August 12,

---

[31] *Id.*
[32] *Id.* ¶22.
[33] *Id.* ¶24.
[34] *Id.*
[35] *Id.* ¶¶23, 25.
[36] *Id.* ¶25.
[37] *Id.*
[38] *Id.* ¶26.
[39] *Id.*

2022, had been dropped.[40] When Wolfe stopped by the Magistrate's Office at City Hall, however, he discovered that the citation had not been dropped.[41] Wolfe was told that he had to plead to that citation immediately and pled not guilty.[42] On September 24, 2022, Wolfe received a notice of trial, and a summary trial was scheduled for October 13, 2022.[43] Plaintiffs were again informed that all charges from the Magistrate's Office would be withdrawn on September 29, 2022.

A nuisance hearing was scheduled for September 21, 2022.[44] Although Becker stated that no hearing was necessary as no violations had occurred since Wolfe's meeting with city officials, the City Solicitor stated that they had to continue with a nuisance hearing.[45] Plaintiffs were advised that Sunbury would forego the nuisance hearing if they could bring proof that an electrician was scheduled to install grounding rods at the Property.[46] Becker subsequently advised that he had entered into the residence without notice or permission.[47] On November 8, 2022, Plaintiffs were advised that the Property had been taken off the nuisance list because there was no work to be done on the Property.[48]

---

[40]    *Id.*
[41]    *Id.* ¶27.
[42]    *Id.*
[43]    *Id.* ¶31.
[44]    *Id.* ¶28.
[45]    *Id.*
[46]    *Id.* ¶29.
[47]    *Id.* ¶30.
[48]    *Id.* ¶34.

The amended complaint, like the original complaint, also states that the Plaintiffs' "summary appeal from March 30, 2022" was resolved on June 3, 2022, and a decision was filed on October 31, 2022, finding Plaintiffs not guilty.[49] However, the amended complaint—like the original complaint—fails to provide the Court any detail about what was being appealed, since it never described any March 30, 2022 citation or determination at all.

### D.    Comparator Properties

Plaintiffs allege that their Property was subject to discriminatory enforcement of city codes in comparison to similarly situated properties. To substantiate this allegation, the amended complaint describes seven comparator properties.

The first two comparators are other properties located on North Fifth Street which have allegedly had "weeds and unsightly vegetation growing on the property for over a year," but have not been cited with any code violations.[50] The third comparator is a property located on North Sixth Street which has had "unsightly vegetation," "[t]he porch on the property [has been] in extreme disrepair and [has been] in danger of collapse," and "[t]he steps leading up to the porch on the property [have been] rotted out and dilapidated" for "well over a year."[51] The fourth

---

[49]    *Id.* ¶33.
[50]    *Id.* ¶40.
[51]    *Id.* ¶41.

comparator property, located on Market Street, has "holes in the siding," but has not been cited or required to repair the building for "over a year."[52]

The fifth comparator property, also located on North Sixth Street, has neither been cited nor condemned "even though the roof is in deplorable condition," the siding is "in violation of the City's codes," and the "stairs utilized to access the porch on the property are in danger of collapse."[53]

The last two comparator properties belong to Sunbury itself. The City's municipal building has had "holes in its siding and [has been] in violation of the applicable codes" for "over a year," and Sunbury's Wetland Ecological Education Park has not been properly mowed or maintained for an unspecified period.[54]

## III.    MOTION TO STRIKE

Paragraph 66 of Plaintiffs' amended complaint states: "[t]he City was recently sued successfully by two Sunbury residents, who stated that the City's code office discriminates against other individuals and that City officials were aware of the fact that monies had to be paid to those plaintiffs."[55] Paragraphs 67 and 68 allege that the property owners in this suit sued Sunbury for unconstitutional enforcement of the City's code ordinances, and as a result it is aware of allegations that it is

---

[52] *Id.* ¶44.
[53] *Id.* ¶42.
[54] *Id.* ¶¶43, 45.
[55] *Id.* ¶66.

unconstitutionally and selectively enforcing its code violations against certain Sunbury residents.[56]

According to Defendants, Plaintiffs are referencing a confidential settlement agreement and general release between it and unrelated plaintiffs, who were also represented by Plaintiffs' counsel.[57] Defendants have attached the confidential settlement agreement in that case under seal.[58]  In their brief in opposition, Plaintiffs acknowledge that Defendants have correctly identified the case.[59]

Defendants now move to strike Plaintiffs' amended complaint.[60] They object to the framing of this agreement as a "successful" suit demonstrating the city's "aware[ness] of the fact that monies had to be paid," contending that the settlement agreement expressly denies liability.[61] Finally, they argue that this allegation should be discounted because evidence of a settlement agreement is inadmissible.[62] Although I agree that the Court may consider the settlement agreement attached by Defendants, I do not agree that paragraphs 66-68 of the amended complaint must be stricken.

---

[56]  *Id.* ¶¶67-68.
[57]  BIS, Doc. 25 at 15-16.
[58]  Settlement Agreement and General Release, Doc. 25-1.
[59]  Brief in Opposition to Motion to Strike and Motion to Dismiss ("BIO"), Doc. 32 at 9-10.
[60]  Motion to Strike and Motion to Dismiss, Doc. 19.
[61]  BIO, Doc. 25 at 10.
[62]  *Id.* at 10-13.

## A.    Materials Outside the Amended Complaint

When deciding a motion to dismiss, a Court generally considers only the allegations in the complaint, exhibits attached thereto, and matters of public record of which it may take judicial notice.[63] Ordinarily, considering any documents outside of those sources requires converting a motion to dismiss to a motion for summary judgment.[64] Courts may also consider documents integral to or explicitly relied upon in the complaint,[65] so long as it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document"[66] and there exist no material disputed issues of fact regarding the relevance of the document.[67]

The Court agrees that it may take judicial notice of the suit and the confidential settlement agreement attached in a sealed filing, including its provision noting that Defendants deny liability for the claims.[68] Though Plaintiffs qualify the purpose for which they made the allegations, they never object to using these documents or to their authenticity. The suit and its related docket entries are matters of public record,[69] establishing "the fact of such litigation and related filings."[70] The

---

[63]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[64]  *See* Fed. R. Civ. P. 12(d).

[65]  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[66]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[67]  *Id.* at 134.

[68]  Settlement Agreement and General Release, Doc. 25-1.

[69]  The Third Circuit has commented that entries on the docket are public records. *See Dashner v. Riedy*, 197 F.App'x 127, 131-32 (3d Cir. 2006).

[70]  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *S. Cross Overseas Agencies, Inc. v. Wag Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999).

settlement agreement and its terms are not public records because the public does not have "unqualified access to all of the documents at issue."[71] But Plaintiffs do, as demonstrated by referencing the suit's disposition in their amended complaint, and then verifying this in their Brief in Opposition. The Court may therefore consider the settlement agreement and its terms.

In *Estate of Roman v. City of Newark*, the plaintiff referenced a consent decree that had been entered against the defendant to support a pattern of similar violations under *Monell v. Department of Social Services*.[72] The Third Circuit held that the plaintiff's municipal liability claims were "based upon" the consent decree despite the complaint never citing specific provisions of it.[73] So it was proper to consider the consent decree, attached by defendants in support of their motion to dismiss, at the motion-to-dismiss stage.[74]

The face of Plaintiffs' complaint is too vague to reveal exactly how this case was resolved, or to even explicitly call attention to the suit itself. But these circumstances do not foil considering the document. "When a complaint relies on a document," even if that reliance is vague, "the plaintiff obviously is on notice of the document."[75] Holding otherwise would mean that "a plaintiff with a legally deficient

---

[71]    *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993).
[72]    *Estate of Roman v. City of Newark*, 914 F.3d 789, 795 (3d Cir. 2019). *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[73]    *Estate of Roman*, 914 F.3d at 797.
[74]    *Id.*
[75]    *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relies."[76] Plaintiffs' case then appears to be indistinguishable from *Estate of Roman*.

Plaintiffs have likewise pleaded details relating to the suit's disposition to support Sunbury's municipal liability under *Monell v. Department of Social Services*, reasoning that it supports Sunbury's knowledge of a pattern of similar constitutional violations.[77] That means that the amended complaint is "based on" the so-called "successful" settlement of this suit.

## B.    Striking Allegations from Complaint

When pleadings contain "redundant, immaterial, impertinent, or scandalous matter," a party may move to strike under Federal Rule of Civil Procedure 12(f). The narrow purpose of a motion to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."[78]  District Courts have broad discretion in granting a motion to strike.[79] However, striking pleadings is a "drastic remedy" to be used "sparingly."[80] Motions to strike are generally disfavored, and "they should be denied unless the challenged allegations have no

---

[76]    *Id.*
[77]    Amended Complaint, Doc. 18 ¶¶66-68; Brief in Opposition, Doc. 32 at 10.
[78]    *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp.2d 393, 402 (E.D. Pa. 2002).
[79]    *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp.3d 852, 857 (M.D. Pa. 2015).
[80]    *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011).

possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more parties to the action."[81]

Defendants argue vigorously that, because settlement agreements are inadmissible at trial under Federal Rule of Evidence 408, they are "immaterial" and should be stricken from a plaintiff's allegations at the motion-to-dismiss stage.[82] "[C]ourts in this circuit have issued divergent rulings on this issue," with some courts holding that Rule 408 "is a rule of evidence and does not govern pleadings"[83] and other courts holding, as Defendants would have it, that some inadmissible settlement material must be stricken even at the dismissal stage.[84]

But in the specific context arising here, the Third Circuit has already settled the issue, again in *Estate of Roman*. The *Estate of Roman* court rejected the defendants' arguments that a consent decree could not be considered on a motion to dismiss the plaintiff's municipal liability claims.[85] The holding that a court may consider documents attached to a defendant's motion to dismiss if they are undisputedly authentic and the plaintiff's claims are based on them, the Third Circuit

---

[81]   *Mifflinburg Tel., Inc. v. Criswell*, 80 F.Supp. 3d 566, 577 (M.D. Pa. 2015).

[82]   BIS, Doc. 25 at 18.

[83]   *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, Civil Action No. 09-2857, 2009 U.S. Dist. LEXIS 11357, at *6 (E.D. Pa. Oct. 29, 2009); *see also BTG Int'l v. Bioactive Labs.*, Civil Action No. 15-04885, 2016 U.S. Dist. LEXIS 83525, at *23-33 (E.D. Pa. Jun. 28, 2016).

[84]   *See Steak Umm Co., LLC*, 2009 U.S. Dist. LEXIS 11357, at *7 (citing *Ciolli v. Iravani*, 625 F.Supp. 2d 276, 286-289 (E.D. Pa. 2009)).

[85]   *Id.* at 796.

explained, "extends to settlement material because plaintiffs 'need not provide admissible proof at the motion-to-dismiss stage.'"[86]

Accordingly, while the Court will look to the settlement agreement attached by Defendants, it will not strike paragraphs 66 to 68 of Plaintiffs' amended complaint. The motion to strike will therefore be denied. However, if Plaintiffs file a second amended complaint, they should clarify paragraph 66 to state that the City recently settled a selective enforcement suit brought by two Sunbury residents, which settlement agreement disclaimed any liability.[87] Plaintiffs should avoid alleging any additional details about the settlement agreement given its confidentiality clause.

## IV.    MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[88] and *Ashcroft v. Iqbal*,[89] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[90] The United States Court of Appeals for the Third Circuit has

---

[86]    *Estate of Roman*, 914 F.3d at 796 (citations omitted) (cleaned up).
[87]    Cleaning up the complaint in this way will spare Defendants from having to attach the settlement agreement in another sealed filing.
[88]    550 U.S. 544 (2007).
[89]    556 U.S. 662 (2009).
[90]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[91]

Title 42 U.S.C. § 1983 "creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution."[92] In this case, Plaintiffs seeks Section 1983 relief from Defendants for class-of-one discrimination and selective enforcement under the Equal Protection Clause to the Fourteenth Amendment. Plaintiffs have inadequately pled their municipal and individual liability claims against Wojciechowski and Sunbury, so neither claim can survive.

### A.    Claims Against Wojciechowski

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[93] A supervisor may be held liable under Section 1983 through his own direct participation, or through policymaking. As to direct participation, "a supervisor may be personally liable

---

[91] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[92] *Manuel v. Cit of Joliet*, 580 U.S. 357, 362 (2017) (cleaned up).
[93] *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[94] Alternatively, a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm,"[95] or failed to supervise his subordinates.[96]

Counts I and II of Plaintiffs' amended complaint seek damages from Wojciechowski for alleged constitutional violations of selective enforcement and class-of-one discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants' brief in support argues that Plaintiffs failed to allege Wojciechowski's personal involvement in the underlying constitutional violations—an essential requirement for Section 1983 liability.[97] But Plaintiffs fail

---

[94]  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Center*, 372, F.3d 572, 586 (3d Cir. 2004).

[95]  *Id.*; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133-34 (3d Cir. 2011) ("[T]he plaintiff must identify a specific policy or practice that the supervisor failed to employ and how that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (1) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.").

[96]  *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)) ("The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.").

[97]  BIS, Doc. 25 at 31-34.

to address this argument in their brief in opposition. Defendants therefore argue in reply that Plaintiffs have waived this argument. I agree. "A brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim."[98] Concerningly, Plaintiffs also failed to provide any briefing in opposition to Wojciechowski's qualified immunity defense.

Additionally, I note that as to Wojciechowski's direct personal involvement, he personally issued, at most, one citation for the front door of the Property not working properly.[99] The amended complaint's other references to Wojciechowski merely involve him requesting access to the property and informing Wolfe of his right to schedule an appeal hearing.[100] Moreover, Plaintiffs never argue a supervisory liability theory in their papers, and despite Wojciechowski's role as "Code Enforcement Supervisor," the amended complaint's general references to citations and notices issued by the Code Office and other code enforcement officers do not

---

[98] *Orange v. United States*, No. 1:23-CV-00393, 2024 U.S. Dist. LEXIS 152280, at *13 (M.D. Pa. Aug. 26, 2024); *Dreibelbis v. Scholton*, 274 F.App'x 183, 185 (3d Cir. 2008); *Levy-Tatum v. Tavient Solutions, Inc.*, 183 F.Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases).

[99] Amended Complaint, Doc. 18 ¶16.

[100] *Id.* ¶¶20 (stating that Wojciechowski wanted access to the Property for an inspection on June 6 and that Wolfe received a notice of blighted property on July 18, without explaining whether the inspection occurred or whether Wojciechowski had any knowledge of or role in the notice of blighted property issuing); 21 (stating that Wojciechowski advised Plaintiffs of the time to schedule an appeal hearing for the nuisance determination, without stating whether Wojciechowski had any knowledge of or role in the notice of blighted property issuing). Plaintiffs may have argued that certain inferences could be drawn from the amended complaint, but as they waived the argument, the Court will not argue those inferences on Plaintiffs' behalf.

explicitly allege Wojciechowski's specific role in, or awareness of, these citations. So if Plaintiffs had not waived this issue, the Court would have had to base Wojciechowski's liability solely on his citation for the broken door. If Plaintiffs choose to file a second amended complaint, they should both clearly specify the full scope of Wojciechowski's involvement in the alleged constitutional violations and brief in opposition to any challenge Defendants present on this issue.

### B.    Claims Against Sunbury

While a municipal body is a "person" which can be liable under Section 1983, it is only liable for its own acts, not the acts of its employees.[101] Supporting municipal liability therefore requires civil rights plaintiffs to satisfy a two-step process: the claim must show (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy, custom, or training.[102] Count III of the amended complaint pleads a so-called "*Monell* claim" against Sunbury. "But *Monell v. Department of Social Services* is simply a decision clarifying how liability for constitutional violations can attach to municipal bodies under Section 1983; it is not a unique cause of action."[103] So Count III pleads the underlying constitutional violations set out in Counts I and II—selective enforcement and class-of-one discrimination in violation of the Equal Protection Clause of the Fourteenth

---

[101]  *Monell*, 436 U.S. at 690-91.

[102]  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

[103]  *Thompson v. City of Williamsport*, No. 4:22-CV-01159, 2023 U.S. Dist. LEXIS 206935, at *11 (M.D. Pa. Nov. 17, 2023).

Amendment. Plaintiffs' municipal liability claim fails because under the facts alleged here, a municipal custom or failure to train is implausible based on only one similar occurrence.[104]

There are various methods of alleging a municipality's liability under Section 1983. Municipalities act through a "policy statement, ordinance, regulation, or a decision officially adopted and promulgated by that body's officers."[105] A single decision by a final policymaker can also support municipal liability.[106] Alternatively, a municipality can also act through practices "so permanent and well settled as to constitute a custom or usage with the force of law."[107] Finally, a municipality can be liable due to its failure to act, such as by providing deficient training or supervision, if this failure demonstrates the municipality's "deliberate indifference to constitutional rights."[108]

Plaintiffs' papers and amended complaint never argue that any official Sunbury policy or decision caused a constitutional violation, but allegations in the amended complaint refer to an allegedly unconstitutional custom and lack of training. While policy-and-custom claims are distinct from failure-or-inadequacy claims, they share a "close relationship" such a that plaintiff's claims may "sound[]

---

[104] There are other theories of municipal liability. But as custom and training are the only theories referenced in Plaintiffs' papers, they are the only theories this Court addresses.

[105] *Monell*, 436 U.S. at 690.

[106] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

[107] *City of St. Louis v. Prapotnik*, 485 U.S. 378, 388, 392 (1989).

[108] *City of Canton v. Harris*, 489 U.S. 378, 388, 392 (1989).

in both" theories.[109] The result of this close relationship is that both of Plaintiffs' municipal liability theories are implausible for the same reason: one instance of similar conduct is not enough. Although municipal liability of all stripes is frustratingly difficult to plead,[110] the Court will dismiss this count without prejudice and allow Plaintiffs one final opportunity to amend.[111]

### 1.    Custom

"Unlike a 'policy,' which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up. Thus, the liability of a municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance or acquiescence in it."[112] Pleading a custom requires showing "that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[113]

---

[109] *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014)).

[110] "The interaction between the Supreme Court's 'plausibility' standards and *Monell* claims likely makes it particularly difficult to get over this first, pleading hurdle." Joanna C. Schwartz, *Municipal Immunity*, 109 VA. L. REV. 1181, 1214 (2023). *But see* Nancy Leond, Katelyn Elrod, and Matthew Nilsen, *Pleading Failures in* Monell *Litigation*, 73 EMORY L.J. 801 (2024) (contending that an "important contributing factor" to plaintiffs' low rates of success in pleading *Monell* liability is "the poor quality of many pleadings filed on behalf of civil rights plaintiffs").

[111] Plaintiffs may also wish to argue other *Monell* theories in their briefings.

[112] *Britton v. Maloney*, 901 F.Supp. 444, 450 (D. Mass. 1995).

[113] *Estate of Roman*, 914 F.3d at 798.

In this case, Plaintiffs' alleged "custom" runs parallel to the alleged underlying constitutional violation of selectively enforcing city ordinances.[114] But Plaintiffs only pleads the single example discussed above, that Sunbury was "recently sued successfully by two Sunbury residents, who stated that the City's code office discriminates against other individuals and that City officials were aware of the fact that monies had to be paid to those plaintiffs."[115] Sunbury's knowledge of the lawsuit is clear by virtue of the settlement agreement it signed. When considered with the confidential settlement agreement appended by Sunbury, however, this suit's relevance is watered down by the fact that Sunbury expressly disclaimed liability as a settlement condition; there was no legal determination that Sunbury had violated the law. Moreover, according to the complaint, the case involved selective enforcement and was based on a protected class rather than on arbitrary factors.[116]

Even granting that this suit involved an analogous instance of conduct, knowledge of one similar instance is legally insufficient to demonstrate a municipal body's acquiescence in a course of conduct "so well-settled and permanent as virtually to constitute law."[117] The very definition of a widespread custom or practice

---

[114] Amended Complaint, Doc. 18 ¶¶62, 66.

[115] *Id.* ¶66.

[116] *Heilig v. City of Sunbury*, No. 4:23-cv-0556-MWB, Complaint, Doc. 1.

[117] *Estate of Roman*, 914 F.3d at 798. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (en banc) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more than one instance,' or even three.") (citations omitted); *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (holding that

implies that it is something that has happened more than once. Even granting that one instance may raise a reasonable inference of a custom, Plaintiffs point to no circumstantial evidence regarding this prior incident, and the Court perceives none, raising a plausible inference that such conduct is "not an anomaly, but the norm."[118]

### 2.    Failure to Train

To support municipal liability for the failure to act, a plaintiff must demonstrate that the failure to act "reflects a deliberate or conscious choice."[119] Because "'deliberate indifference' is a stringent standard of fault,"[120] "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on" failure-to claims, such as "the failure to train."[121] The plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently

---

three potential violations over nineteen months "does not establish a widespread custom or practice," and proposing that "the frequency of conduct necessary to impose *Monell* liability must be more than three.").

[118]  *See Alexander v. Bucks County*, No. 21-CV-4633-KSM, 2023 U.S. Dist. LEXIS 76883, at *19-20 (E.D. Pa. May 2, 2023) (quoting *Garcia v. Cnty. of Bucks*, Civil Action No. 17-3381, 2018 U.S. Dist. LEXIS 124779, at *7 (E.D. Pa. Jul. 25, 2018)). *See also Doe v. Williamsport Area Sch. Dist.*, 699 F.Supp.3d 306, 318-20 (M.D. Pa. 2023) (describing the role of circumstantial evidence in plausibly alleging a pattern of constitutional violations). In fact, Plaintiffs do not point to anything at all, as they failed to brief on municipal liability and also appear to have waived this argument; it would benefit all parties and the Court for Plaintiffs to respond to the arguments raised by Defendants.

[119]  *Estate of Roman*, 914 F.3d at 798.

[120]  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

[121]  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

cause deprivation of constitutional rights."[122] "A pattern of similar constitutional violations" is ordinarily necessary to put a municipality on notice of the consequences of its failure to act, and therefore necessary "to demonstrate deliberate indifference for purposes of failure to train."[123]

Moreover, "the alleged deficiency in a training program must be closely related to the alleged constitutional injury because '[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, [said] plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.'"[124] This means that "liability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of continued injury."[125] Alleging "what specific training existed" and "what specific training was due" is therefore a "necessary plausibility requirement."[126]

---

[122] *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

[123] *Connick*, 563 U.S. at 62.

[124] *Forrest v. Parry*, 930 F.3d 93, 109 (3d Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

[125] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014).

[126] *Morgan v. Centre County*, No. 4:23-CV-00872, 2024 U.S. Dist. LEXIS 202703, at *23 (M.D. Pa. Nov. 6, 2024); *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)) ("[A] failure to train claim requires a plaintiff to 'identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur."); *Wood v. Williams*, 568 F.App'x 100, 105 (3d Cir. 2014) ("The complaint was also deficient in alleging a claim for failure to train or supervise. The complaint did not allege specific facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur.").

Plaintiffs' amended complaint fails here, too. Because the amended complaint plausibly alleges *at most* one prior instance of similar conduct, Plaintiffs have not alleged municipal policymakers' knowledge of a history of mishandling, and therefore have not plausibly alleged Sunbury's deliberate indifference to selective enforcement or class-of-one discrimination.[127] The amended complaint is also insufficient because Plaintiffs have failed to allege what training exists in Sunbury, and what specific training was due, that has a causal nexus to the constitutional violations he alleges.

### C.    Constitutional Violations

There is no need to reach the underlying merits because the foregoing analysis is sufficient to dismiss the claims against both defendants. But because the merits of the underlying constitutional violations have been the focus of briefing, I nevertheless analyze them. I conclude that a class-of-one constitutional violation is plausible based on the allegations in the amended complaint. While a selective enforcement claim would track this analysis, I refrain from deciding whether such claims are cognizable under these circumstances. Additionally, I note that Section 1983 requires connecting such violations to the defendants for liability to attach. For

---

[127]    *See Connick*, 563 U.S. at 62 (rejecting evidence of four *Brady* violations over ten years as insufficient to put prosecutor's office on notice that extra training was needed to avoid constitutional violation).

Wojciechowski, that is by showing his personal liability; for Sunbury, that is by showing municipal liability under *Monell*.

### 1.    Class-of-One Claim

Plaintiffs plead class-of-one discrimination through arbitrary enforcement of city codes against them. To establish a "class of one" equal protection claim plaintiffs "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[128] For the most part, only the first two elements are contested in this motion to dismiss.[129]

### a.    Similarly Situated Comparators

The main disputed issue is whether Plaintiffs have plausibly alleged the existence of a similarly situated property. Analyzing the original complaint was a simple matter, as it was bereft of any detail regarding comparators, leaving the Court with little basis to conclude that a similarly situated property could exist. Striking the conclusory statements in Plaintiffs' original complaint, no alleged fact gave rise

---

[128] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

[129] The Defendants' only relevant argument on the third prong, rational basis, is unavailing. As to one of the comparator properties which had dysfunctional stairs, the plaintiffs admit that the Property had a similar code violation and the defendants in turn argue that this admission makes enforcement of the code rational per se. Amended Complaint, Doc. 18 ¶41; BIS, Doc. 25 at 25-26. But even assuming that the Property's stairs were noncompliant with city codes during the relevant timeframe, Defendants' objection misses the point. The constitutional violation is unequal treatment, so the defendants must allege a rational basis for treating the plaintiff differently from others, not a rational basis for enforcing the code in isolation. "Discriminatory enforcement of a statute or ordinance is not justified simply because the enforcement is otherwise valid." *Hill v. City of Scranton*, 411 F.3d 118, 130 (3d Cir. 2005).

to a plausible inference of discriminatory treatment.[130] This time, however, Plaintiffs have set out seven properties which they believe are similarly situated.

For purposes of this analysis, the Court narrows its focus to the four properties that have allegedly been noncompliant for over a year: two of which have had overgrown weeds; one of which has had overgrown weeds, a porch in danger of collapse, and rotten and dilapidated steps; and one of which has had holes in its siding.[131] These code violations are relevantly similar in severity to the violations for which Plaintiffs were cited,[132] and these properties are also residential. Defendants counter that these properties are still not similarly situated because they have not been given a five-year period of forbearance, like Plaintiffs. Considering the plausibility balancing act between the demanding factual showing required in class-of-one cases, on the one hand, and the realities of pleading, on the other, I conclude that the properties are sufficiently similar for Plaintiffs to plausibly allege this element.

"The failure to identify similarly situated persons dooms an equal-protection claim."[133] An Equal Protection claim must allege more than "broad generalities"

---

[130] *See, e.g.*, *Jenna M. v. Pa.*, Civil Action No. 23-1378, 2024 U.S. Dist. LEXIS 198563, at *16-17 (W.D. Pa. Oct. 31, 2024) (collecting cases holding that failing to allege any facts about similarly situated comparators warrants dismissal of a class-of-one complaint).

[131] Amended Complaint, Doc. 18 ¶¶40-41, 44.

[132] As alleged, several of the citations were frivolous; the difference would then be that the comparator properties actually violated city codes, whereas the Property did not. Construing the amended complaint in this way does not create a relevant distinction.

[133] *Stradford v. Sec'y of Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) (citing *Hill*, 455 F.3d at 239).

when identifying a comparator.[134] Although "[t]he Third Circuit does not require [the plaintiff] to show that the [comparators] are *identical* in all relevant respects," it does require showing that "[p]ersons are *alike* in all relevant respects,"[135] meaning that the comparators "need only share commonalities that merit similar treatment."[136] "Because 'equality' is a rhetorically ambiguous concept," it is important to keep in mind that this analysis focuses on unequal treatment "among persons similarly situated according to a *relevant* standard of comparison."[137] Similarly situated comparators allow courts to "isolate the factor allegedly subject to impermissible discrimination," and "other factors explaining disparate treatment will usually preclude persons from being similarly situated."[138] However, determining whether individuals are similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner."[139] The question of whether another is similarly situated is "usually a question for the fact-finder."[140]

---

[134] *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007)).

[135] *Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F.Supp. 2d 616, 628 (W.D. Pa. 2012). *See also Simmermon v. Gabbianelli*, 932 F.Supp. 2d 626, 633 n.10 (D.N.J. 2013).

[136] *Bowman v. Wahl*, Case No. 2:19-cv-3092-JDW, 2021 US Dist LEXIS 117773, at *7 (E.D. Pa. Jun. 24, 2021).

[137] *Stradford*, 53 F.4th at 74 (emphasis added).

[138] *Id.*

[139] *Monaco v. Am. General Assur. Co.*, 359 F.3d 196, 305 (3d Cir. 2005).

[140] *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("[A]s a general rule, whether items are similarly situated is a factual issue that should be submitted to a jury."); *Simmermon v. Gabbianelli*, 932 F.Supp. 2d 626, 633 (D.N.J. 2013) (quoting *Fiala v. Bogdanovic*, CIV. 07-2041, 2009 U.S. Dist. LEXIS 93993, at *14 (M.D. Pa. Oct. 8, 2009)).

At the motion to dismiss stage, this demanding and fact-intensive inquiry must be balanced with the realities of pleading. "[S]tandards of pleading are not the same as standards of proof."[141] "The Supreme Court's *Twombly* formulation of the pleading standard" requires only that "a complaint [makes allegations] with enough factual matter (taken as true) *to suggest* the required element," which "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."[142] From this general backdrop, some courts within this Circuit have observed that "[b]ecause whether someone is similarly situated is a 'a case-by-case fact-intensive inquiry,' courts 'in this Circuit have stated that a final determination of this issue is inappropriate at the motion-to-dismiss stage."[143]

---

("'There is no precise formula to determine whether an individual is similarly situated to comparators,' and it is generally a question of fact for the jury.").

[141]  *Phillips*, 515 F.3d at 246.

[142]  *Id.* at 235 (quoting *Twombly*, 550 U.S. at 556); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting the same language). *See also Klein v. Donatucci*, 561 F. App'x 503, 507 (3d Cir. 2021) (quoting *Phillips*, 515 F.3d 224, 244 (3d Cir. 2008)) (alluding to "the 'relax[ed]' pleading requirements for a class-of-one theory, which 'negat[es] the need for specificity'"). The Court does not read *Klein* to endorse imposing special rules in such circumstances, but rather to acknowledge how a class-of-one claim may interact with the general plausibility lessons imparted by *Twombly* and *Iqbal*.

[143]  *A.H. v. Med. Rescue Team S. Auth.*, Civil Action No. 2:23-02176-MJH-CBB, 2024 U.S. Dist. LEXIS 200667, at *17 (W.D. Pa. Nov. 1, 2024) (quoting *Jackson Trails, Ltd. v. N. Beaver Twp., Lawrence Cnty.*, Civil Action No. 2:22-294, 2022 U.S. Dist. LEXIS 111628, at *10 (W.D. Pa. Jun. 23, 2022) and *Davis v. Wetzel*, No. 23-0208, 2024 U.S. Dist. LEXIS 21177, at *28 (W.D. Pa. Feb. 7, 2024)). *See also Sims v. Ct. of Common Pleas of Allegheny Cnty.*, No. 2:10-cv-151, 2010 U.S. Dist. LEXIS 103454, at *11-12 (W.D. Pa. Sep. 30, 2010) ("At this stage of the proceeding, after giving all reasonable inferences in favor of the Plaintiff, the Court concludes that he is entitled to engage in discovery as to whether the alleged comparators are, in fact, similarly situated.").

At the same time, the Third Circuit has recently reminded us that "[a]t the pleading stage . . . plaintiffs must adequately allege that they are 'alike in all relevant respects,' and must offer more than conclusory assertions."[144] Based on recent unpublished Third Circuit decisions, this requires plaintiffs to "allege facts showing a similarly situated comparator and related instances of differential treatment to survive dismissal."[145] In sum, the Court will demand factual matter setting out similar properties and examples of why they are subjected to differing standards, but it will not be overly exacting before discovery fleshes out the particular details of the case and the comparator properties.

Moving to the merits, the Court rejects Defendants' argument that the City's significantly longer total period of forbearance makes the four alleged properties implausible comparators.

Sunbury did not refrain from citation for no reason. Unlike the comparator properties, Plaintiffs had an informal agreement with the code enforcement office. Whether the comparator properties had made a similar city agreement prior to their

---

[144] *Child's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 84 (3d Cir. 2024) (internal citations omitted).

[145] *Brooks v. State Coll. Area Sch. Dist.*, 707 F.Supp. 3d 448, 467-68 (M.D. Pa. 2023). *See Mann v. Brenner*, 375 F.App'x 232, 238-39 (3d Cir. 2010); *Perrano v. Township of Tilden*, 423 F.App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, [plaintiffs] must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F.App'x 46, 49 (3d Cir. 2019) (upholding dismissal of class-of-one claim where plaintiff's allegations, which described another commercial property "not subjected to arbitrary citations and complaints," failed to provide "more specific examples of how the [comparator property] is similarly situated."); *Parker, L.P. v. City of Phila.*, 660 F.App'x 156, 158-59 (3d Cir. 2016); *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh*, 806 F.App'x 134, 143 (3d Cir. 2020).

year-long noncompliance is not a relevant aspect of comparison. After all, relevance in such contexts is measured by "the similarity of the properties being compared, including their physical characteristics and their similarities in the eyes of a defendant."[146] Wolfe and the City made the mutually beneficial agreement that Wolfe would restore the condemned property after purchasing it, and the City agreed to extend its period of nonenforcement during Wolfe's surgeries. So in the eyes of the Defendants, the Property was not noncompliant during this period in which it waived application of the city codes.

Noncompliance during an agreement not to enforce city codes cannot be a relevant criterion in whether to enforce city codes; the agreement period definitionally excludes itself from the window of relevant forbearance. In other words, the period of forbearance from 2016 to at least early 2020 is not, construing these facts in the light most favorable to the plaintiff, a relevant aspect of comparison between the properties. This distinction makes the Property at issue here and these comparator properties more, not less, similarly situated, because it leaves a period of noncompliance lasting just slightly over a year when the first code enforcement actions began, which is the same as the comparator properties' periods of noncompliance.

---

[146] *Jeffers v. City of Wash.*, No. 14-1361, 2015 U.S. Dist. LEXIS 90427 (W.D. Pa. Jul. 13, 2015).

More critically, no period of forbearance is clear prior to the second period of code enforcement actions in 2022, including Sunbury's public nuisance determination. Based on the allegation that Plaintiffs' inspector Steve Cartwright found, and that City Administrator Derek Becker stated, that there were no code violations on the Property, it can plausibly be inferred that the nuisance determination was frivolous. Discovery may undercut these allegations, but the Court must accept them as true for purposes of this motion to dismiss.

The Court does not opine on whether the properties will be sufficiently similar to survive summary judgment. Discovery may reveal information relevantly distinguishing the comparator properties, such as by demonstrating that they had not been subject to enforcement for over a year because they, too, had made agreements with Sunbury. Discovery might also flesh out the details of Plaintiffs' agreement in such a way as to further distinguish the Property from the alleged comparators or to demonstrate a rational basis for distinguishing them. Nevertheless, the amended complaint contains sufficient allegations to plausibly allege the existence of similarly situated comparator properties who were not subject to code enforcement.

### b.    Intentional Discrimination

Alleging a similarly situated comparator is not enough by itself. A class-of-one plaintiff must also show that this differential treatment was intentional, meaning the plaintiff must show that "the decisionmaker selected or reaffirmed a particular

course of action at least in part because of, not merely in spite of, its adverse effects."[147] This element is crucial because while the Equal Protection Clause proscribes discriminatory treatment, "equal protection does not require that all evils of the same genus be eradicated or none at all."[148]

The amended complaint provides sufficient factual allegations to support an inference of intentional discrimination. One key piece of evidence is the police officers' alleged hostility toward Wolfe when he visited City Hall to inspect records regarding the citations. The officers badgered Wolfe by asking him what he was "trying to accomplish," followed him back into City Hall, handcuffed him, and injured him. The reason for these events—and whether they bear upon any code enforcement actions by relevant decisionmakers—is not entirely clear. But as alleged, these facts support a plausible inference of spite among city officials which may have been communicated to the officers, especially given Plaintiffs' allegation that his early request for documents relating to code compliance revealed a "notice to officers to watch the Plaintiffs' house."[149] Relatedly, the way in which city inspections were carried out, by trespassing on and inside of the Property without notice,[150] also supports the allegation that Defendants were vexatiously issuing

---

[147] *Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)); *Greco v. Senchak*, 627 F.App'x 146, 150 (3d Cir. 2015).

[148] *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980).

[149] Amended Complaint, Doc. 18 ¶14.

[150] The amended complaint contains several allegations of such trespass. Amended Complaint, Doc. 18 ¶¶16 ("Swope was seen wandering around the Property without any notice . . .

citations out of spite, and in doing so, intentionally enforced city codes more strictly against the Property than against similarly situated comparator properties.

Another allegation bearing upon whether citations were being issued out of spite is that, when Wolfe asked a code enforcement officer why the Property was being cited before the expiration of a 90-day agreement to make specified repairs, the officer "became extremely rude and hostile and stated that the Plaintiff had only 30 days to make repairs," and stated that "he would receive weekly fines until the Property was removed from the public nuisance properties list."[151]

The other key piece of evidence is the course of repeated, frivolous citations alleged in the amended complaint. The very first citation provides a case in point: the Property was cited for overgrown weeds, even though the weeds were located on the neighboring property. Defendants argue that this fact favors them, for it shows that other properties' code violations resulted in a citation and therefore the Plaintiffs were not singled out. This argument loses the yard for the weeds—the Plaintiffs' Property received the citation, and that is what matters. Likewise, citing Wolfe for failure to keep the Property in good repair—and then fining the Property five more times, weekly, for continued noncompliance—could also plausibly be viewed as frivolous when these citations were given before Wolfe's 90-day repair agreement

---

Plaintiffs were advised by Wojciechowski that he was sending a citation because the front door of the Plaintiffs' house did not work properly."), 30 ("Becker advised that he had entered into the Plaintiffs' private residence without notice or permission.").

[151] Amended Complaint, Doc. 18 ¶13.

had lapsed. The frivolous nature of these citations was supported by the fact that many of them were dismissed before a magistrate.

Moving to the 2022 code enforcement actions, a similar saga unfolded. The Property was declared to be a public nuisance despite Plaintiffs' inspector concluding that it contained no code violations and City Administrator Becker stating this during a meeting, and Plaintiffs were threatened with a nuisance hearing until the Property was ultimately taken off the nuisance list. Likewise, the Property was cited despite an agreement reached with Becker.

Drawing all reasonable inferences in favor of the Plaintiffs, the amended complaint contains sufficient factual matter to plausibly infer that Sunbury and the Code Enforcement Office were issuing citations out of spite, rather than applying city codes in an even-handed manner. Together, these facts plausibly suggest the existence of spite-based animus against Plaintiffs which prompted Sunbury's class-of-one discrimination against him. For example, it could plausibly be argued that despite the forbearance agreement, Code Enforcement Officials were so frustrated with Wolfe's slow progress in restoring the home that it looked for any excuse to harass him. Regardless of the motivations, that the citations had some spite-based underpinning is at least plausible based on the amended complaint.

## 2.    Selective Enforcement Claim

"To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right."[152] Plaintiffs concede in their brief in opposition that they allege no membership in a class "based on religion or race or some other arbitrary factor."[153] But they contend that they have been subjected to selective enforcement to prevent the exercise of a fundamental right—and that right, according to Plaintiffs, is the "right to be free from arbitrary enforcement of city codes."[154]

In essence, Plaintiffs argue that codes are being arbitrarily enforced to prevent them from exercising his right to be free from codes being arbitrarily enforced. The most obvious problem is that this is circular. The second problem is that it has no basis in any precedent; a "'fundamental right' must be either enumerated in the Bill of Rights or 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty.'"[155] The right to be free from arbitrary enforcement of

---

[152] *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d at 125 (internal alterations omitted)).
[153] BIO, Doc. 32 at 15.
[154] *Id.* at 15.
[155] *See Child's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 78 (3d Cir. 2024) ("A 'fundamental right' must be either enumerated in the Bill of Rights or 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty.") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

city codes does not fit that mold. The third problem is that the Supreme Court of the United States and Third Circuit have already articulated a clear framework for reviewing such arbitrary, non-class-based Equal Protection Clause claims, and that framework is bringing a class-of-one claim, not bringing a selective enforcement claim, which is comparatively easier to satisfy.[156]

I finally highlight what Plaintiffs do *not* argue. Plaintiffs do not argue that the selective enforcement was due to "a malicious or bad faith intent to injure," so the Court does not opine on the validity or plausibility of such a selective enforcement claim.[157] Secondly and relatedly, Plaintiffs do not argue that their selective enforcement claim should survive because it was based on an "arbitrary factor" other than a protected class or the exercise of a fundamental right. Although some of the Court's preliminary research indicates that selective enforcement claims may be available under such a theory,[158] the Court refrains from weighing in whether either

---

[156]  *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hill v. Borough of Kutztown*, 455 F.3d at 239.

[157]  *See Dombrosky v. Stewart*, Civil Action No. 3:10-1477, 2012 U.S. Dist. LEXIS 121080, at *18 (M.D. Pa. Aug. 27, 2012), *aff'd*, 555 F.App'x 195 (3d Cir. 2014).

[158]  *See id.* (permitting selective enforcement claim based on spite); *United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979) ("[I]t is clear that [the claimant] could raise his claim of selective prosecution based on individual discrimination."); *Goodfellas, Inc. v. Dunkel*, No. 3:15-CV-1633, 2016 U.S. Dist. LEXIS 154977, at *32 (M.D. Pa. Nov. 8, 2016) ("[T]he Court reads the Third Circuit's decision in *Torquato* as approving of selective enforcement claims that are not premised on class-based discrimination), *34 (holding that qualified immunity barred bringing a selective enforcement claim premised on "a municipal body's decision to enforce an ordinance based on an 'arbitrary factor' unrelated to suspect classifications or fundamental rights" because of a division of authority among the circuit courts and within the Third Circuit); *Frederick v. Barbrush*, Civil Action No. 1:13-CV-00661, 2014 U.S. Dist. LEXIS 27229, at *33 (M.D. Pa. Mar. 4, 2014) (allowing selective enforcement claim based on "resentment and malice" to proceed).

type of allegation can support a selective enforcement claim, given that this issue is both unnecessary to resolving the pending motion and unbriefed. If selective enforcement claims are available in such circumstances, however, then the analysis would track the class-of-one analysis above. Accordingly, the Court will not dismiss the selective enforcement claim with prejudice.

### D.    Punitive Damages

The parties agree that punitive damages are unavailable against municipal defendants, so any claims for punitive damages are dismissed with prejudice.[159] The parties also agree that punitive damages are unavailable against officials sued in their official capacities.[160] However, punitive damages remain available against officials sued in their individual capacities,[161] and as Plaintiffs seek damages from Wojciechowski, it is not clear to the Court that they are solely suing him in his official capacity. So this concession by Plaintiffs does not bar their punitive damages claims against Wojciechowski.

## V.    CONCLUSION

Wolfe has waived his claims against Wojciechowski by failing to brief in response on his personal liability or qualified immunity. The allegations in Wolfe's amended complaint also remain insufficient to plausibly allege a municipal custom

---

[159] BIO, Doc. 32 at 16.
[160] *Id.*
[161] *Smith v. Wade*, 461 U.S. 30, 55 (1983).

or failure to train, which are the only municipal liability theories directly referenced in Wolfe's papers. Despite these pleading failures, the Court will grant one final opportunity to amend, as Wolfe's amended complaint plausibly alleges at least an underlying Equal Protection Clause violation under a class-of-one theory, if not also under a selective enforcement theory.

An appropriate Order follows.

BY THE COURT:


<u>s/ Matthew W. Brann</u>
Matthew W. Brann
Chief United States District Judge